IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 22, 2009 Session

# IRIS TERESA BOWLING CHAMBERS v.
# FAYE BOWLING DEVORE, ET AL.

**Direct Appeal from the Chancery Court for Fayette County**
**No. 14533    William C. Cole, Chancellor**

_____

**No. W2008-02548-COA-R3-CV - Filed November 9, 2009**

_____

This case involves the interpretation of the term "bodily heirs." Testator's will, probated in 1942, left certain lands to his daughter for her life, and then to her "bodily heirs." The life tenant's granddaughter concedes that she is not entitled to take through her deceased father, as his interest lapsed when he predeceased the life tenant. However, she contends that she is entitled to take directly as a "bodily heir" of the life tenant. We agree that if granddaughter is her father's issue, and her father is the life tenant's issue, she is a "bodily heir" of the life tenant. Thus, we reverse the trial court's grant of summary judgment to defendants, and we remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Thomas M. Minor, Somerville, TN, for Appellant

Robert Stephen Butler, Sr., Somerville, TN, for Appellees Faye Bowling Devore, Tannis Ann Bowling Pleasants and Allan Bruce Bowling

Lee S. Saunders, Somerville, TN; Steven R. Walker, Memphis, TN, for Appellee Helen McKnight

## OPINION

### I. FACTS & PROCEDURAL HISTORY

The Last Will and Testament ("Will") of Robert Milton Stone ("Testator") was probated on November 16, 1942, in Fayette County, Tennessee.[1] The Will devised five tracts of land at issue. Testator's daughter, Nellie Stone Bowling, was granted a life estate in four tracts, totaling 1070 acres. Upon Nellie's death, the Will provided:

> At the death of my daughter, Nellie, I give these lands that are set [] out above in fee simple to *her bodily heirs*, share and share alike.

(emphasis added). A fifth 442-acre tract was devised to Testator's wife for her life, and upon her death, to Testator's daughters, Nellie and Fredda, for their lives. Upon the deaths of Nellie and Fredda, the Will provided that

> at their death, I give and direct the share each held to *their bodily heirs*.

(emphasis added). After the death of Testator's wife in March of 1960, Nellie and Fredda executed a partition deed, leaving each sister with a life estate in her 221 acres.

Nellie died on May 8, 2006, at the age of 101. Helen Mabel McKnight was her only surviving child,[2] as Nellie's two sons, Robert Milton Bowling and T.W. Bowling, III, predeceased her.[3] However, Nellie had four surviving "grandchildren," all "children" of T.W.: Iris Teresa Bowling Chambers (sometimes hereinafter "Appellant"); Faye Bowling Devore, Tannis Ann Bowling Pleasants, and Allan Bruce Bowling, T.W.'s adopted child. A question of fact exists regarding whether Iris, Faye, Tannis, and Allan are T.W.'s biological children.[4]

In September of 2007, Nellie's granddaughter, Iris, filed a "Complaint to Determine Heirship, to Quiet Title and for Partition" in the Fayette County, Tennessee, Chancery Court, seeking a determination of her rights in the subject property and alleging that Allan, as an adopted child, had no rights to the property. Iris later amended her complaint to further allege that Faye and Tannis had no rights to the subject property, as she alleged they were not T.W.'s biological children. Iris'

---

[1] The Will was executed on November 30, 1940. The date of Testator's death is unclear from the record before us.

[2] It is unclear whether the parties dispute that T.W. was Nellie's biological child. We make no finding regarding such.

[3] Robert Milton Bowling died on January 16, 1951, without issue, and T.W. Bowling, III died on May 29, 1989.

[4] Iris alleges that Faye and Tannis are T.W.'s step-children. We make no finding regarding the biological identities of any of the parties.

siblings, Faye, Tannis, and Allan, as well as Iris' aunt, Helen, filed motions to dismiss for failure to state a claim upon which relief could be granted. The motions argued that Iris lacked standing to file the complaints, as Helen, Nellie's only surviving child, owned 100% of the fee simple title to the property.[5]

On January 15, 2009, the trial court entered an "Amended Order Granting Motions to Dismiss and/or for Summary Judgment." The order stated in part:

> based upon the decision of the Tennessee Supreme Court in the case of Rutherford County v. Wilson, 121 S.W.3d 591 (Tenn. 2003) which the Court finds to be determinative of the current motion, and specifically, the language of the Court which states as follows:
>
> > "An intent to convey a contingent remainder would manifest a clear intention to preclude a deceased class member[']s issue from taking the share of the property that the deceased class member would have taken[. *Rutherford*,] 121 S.W.3d at 597[.]"
>
> the Court finds that by using the term "bodily heirs[,]" Robert Milton Stone created a contingent remainder and since T.W. Bowling, III, predeceased the life tenant, his interest lapsed and his issue, including the Plaintiff, Iris Teresa Bowling Chambers, are precluded from taking the share that T.W. Bowling, III would have taken had he survived the life tenant and further that Defendant Helen Mabel McKnight, who survived the life tenant is the 100% owner of the property at issue.

Iris appeals.


## II. ISSUES PRESENTED

Appellant has timely filed her notice of appeal and presents the following issue for review, summarized as follows:

1.  Whether the issue of a child who predeceases the life tenant is included within the class of "bodily heirs" of the life tenant.


## III. STANDARD OF REVIEW

---

[5] Helen later filed a "Restated Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted[,]" asking the trial court to consider her motion one for summary judgment, as the motion referred to matters outside of the pleadings.

In the instant case, we are asked to review the trial court's grant of summary judgment to defendants. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law. *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings. *See Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).

## IV. DISCUSSION

### A. Interest of Issue of T.W. Bowling, III

"A class gift is a gift to a group of persons who are not named, who have one or more characteristics in common, and whose number may vary." *Rutherford County v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003) (opinion on petition to rehear) *cert. denied*, 543 U.S. 815 (2004) (citing *Jennings v. Jennings*, 1 Beeler 295, 165 Tenn. 295, 54 S.W.2d 961, 963 (1932); *Williams v. McFarland*, 9 Smith (TN) 468, 162 Tenn. 468, 37 S.W.2d 116, 118 (1931)). Our General Assembly, in 1927, enacted the Tennessee Class Gift Statute, which at the time of the Testator's death, provided:

> Where a bequest, devise, conveyance, transfer or gift is made to a class of persons
>
> subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment, distribution, vestiture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property that the member so dying would take if living, unless a clear intention to the contrary is manifested by the will, deed or other instrument.

**Tenn. Code Ann. § 32-3-104 (1934)**.

The Tennessee Class Gift Statute abolished a rule of construction known as the "Tennessee Class Doctrine," which "held that remainders to a fluctuating class of persons remained contingent until the time set in the instrument for distribution or payment."[6] *Rutherford County*, 121 S.W.3d

_____

[6] The Tennessee Class Gift Statute "is generally considered to have been intended to relieve the harsh effect of the common law doctrine, at least in some instances, by allowing the surviving issue of a class member who dies before the time the class would have come into possession of the gift to take that class member's share." *Rutherford*

at 596 (citing *Nicholson v. Nicholson*, 496 S.W.2d 477, 479 (Tenn. 1973); *Walker v. Applebury*, 22 McCanless 91, 218 Tenn. 91, 400 S.W.2d 865, 868-69 (1965) *overruled by Rutherford County v. Wilson*, 121 S.W.3d 591 (Tenn. 2003); *Satterfield v. Mayes*, 30 Tenn. 58, 59 (1850) *superseded by statute as stated in Rutherford County v. Wilson*, 121 S.W.3d 591 (Tenn. 2003)). "Therefore, the rule now is that even if the time of distribution or payment is set at a subsequent period or upon the happening of a future event, 'the individual members of the class will take vested transmissible interest[s] unless the [instrument], considered as a whole in the light of all the circumstances, manifests a clear intention to the contrary.'" ***Id.*** (quoting *Karsch*, 313 S.W.2d at 255).

In order for the Tennessee Class Gift Statute to apply, the granting instrument must: "1) convey the property to a class; 2) set the time for distribution 'at a subsequent period or on the happening of a future event'; [] 3) not show a clear intention to preclude the issue of a deceased class member from taking the share of property that the deceased class member would have taken if living at the time for distribution[;][7]" and 4) "a member of the class must die before the time for distribution and must have issue living at the time for distribution." ***Id.*** (quoting Tenn. Code Ann. § 32-3-104).

As we stated above, Testator's Will, concerning the 1070 acres, provides that "At the death of my daughter, Nellie, I give these lands that are set . . . out above in fee simple *to her bodily heirs*, share and share alike." (emphasis added). Likewise, regarding the additional 221 acres, the Will states that upon Nellie's death, "I give and direct the share [she] held to [her] *bodily heirs*." (emphasis added).

The terms "bodily heirs" and "heirs of the body" are synonymous. ***See Fehringer v. Fehringer***, 26 McCanless 585, 222 Tenn. 585, 439 S.W.2d 258, 261 (Tenn. 1969) (citing Restatement of the Law of Property, Future Interests, Chapter 23, § 306 cmt. b (1940)). Our Supreme Court has explained the effect of defining as class in such terms, as follows:

> Case law defines the term 'heirs of the body' as the lineal descendants of a designated person who would succeed to the property of the designated person if that person died intestate owning the property. As such, the legal definition of this term requires that the heirs of a designated person's body survive that person. Therefore, if the class is defined as 'the heirs of [the life estate owner's] body,' the individual members of the class cannot be determined until the time of [the life estate owner's] death, and the interest of any class member who predeceases [the life estate owner] would lapse. Thus, the remainder would be contingent. . . . An intent to convey a contingent remainder would manifest a clear intention to preclude a deceased class

---

*County v. Wilson*, No. M2002-01382-COA-R3-CV, 2002 WL 312506, at *14 (Tenn. Ct. App. Feb. 28, 2002) *rev'd on other grounds*, 121 S.W.3d 591 (Tenn. 2003). Under the common law doctrine, the interest of a non-surviving class member lapsed, depriving his children of his interest. ***Id.***

[7] A remainder to a class "will be treated as vested unless the contrary is expressly provided for in the will." ***Rutherford County***, 2002 WL 312506, at *18 (quoting *Karsch*, 203 Tenn. at 354-55, 313 S.W.2d at 255).

member's issue from taking the share of the property that the deceased class member would have taken.

*Rutherford County*, 121 S.W.3d at 597. (internal citations omitted).

Because the Will conveyed the subject property, upon Nellie's death, to Nellie's "bodily heirs," a clear intention to create a contingent remainder was shown. ***See Burton v. Kinney***, 27 Beeler 1, 191 Tenn. 1, 6, 231 S.W.2d 356, 358 (Tenn. 1950) ("A remainder to the heirs of the life tenant is generally a contingent remainder, for, there being no heirs to a living person, until the termination of the life estate, no one can claim as the heir of the life tenant.") (quoting 23 R.C.L., Section 95, 551). T.W.'s interest in the property was contingent upon his survival to the termination of Nellie's life estate, and the Tennessee Class Gift Statute did not operate to prevent his interest from lapsing at his death. Thus, when he predeceased Nellie, his interest was extinguished. Accordingly, his issue are not entitled to take his share pursuant to the Class Gift Statute.

### B.  Interest of Class of "Bodily Heirs"

Although we have found that T.W.'s issue are not entitled to take a share of the subject property pursuant to the Class Gift Statute, our inquiry does not end there. We must now address Iris' contention that she is entitled to take *directly* as a "bodily heir" of Nellie. The case of *Rutherford County v. Wilson* is instructive on this issue.

In *Rutherford County*, the testator conveyed certain property, by deed, as follows:

> The interest herein conveyed to [my daughter, Martha,] is a life estate . . . the remainder interest to go to the *heirs of her body* on her death, in accordance with the laws of descent and distribution; and should . . . Martha . . . have no *children or representatives of children* at her death, then the remainder interest shall go to my next of kin as provided by law.

2002 WL 312506, at *1. (emphasis added). Condemnation proceedings were commenced by Rutherford County, seeking to take a portion of the property Martha held as a life tenant. ***Id.*** Martha, Martha's daughter, and Martha's granddaughter (the daughter of Martha's deceased son) were named as parties to the condemnation proceedings. ***Id.*** Martha's daughter-in-law (the widow of Martha's deceased son, and mother of Martha's granddaughter who was named as a party) intervened in the case, claiming that she had inherited, through intestate succession, a one sixth (1/6) interest in the property.[8] ***Id.***

---

[8] Martha's daughter-in-law argued that each of Martha's three children had a 1/3 vested remainder interest in the property, which could be transferred during life, or in death, by will or intestate succession. ***Rutherford County***, 2002 WL 312506, at *6. Apparently, her argument continued that when her husband died intestate, she and her daughter equally split his 1/3 share of the property.

This Court found that the language of the grant deeding Martha's remainder interest to the "heirs of her body" evidenced a clear intention to create a contingent remainder. *Id.* at *4. Thus, the Tennessee Class Gift Statute did not operate to prevent Martha's son's interest from lapsing when he predeceased the life tenant. *Id.* at *4-5. However, our Supreme Court reversed this finding, stating that "[t]he deed . . . must be considered as a whole in light of all the circumstances[,]" *Rutherford County*, 121 S.W.3d at 597 (citing *Karsch*, 313 S.W.2d at 255), and pointing out that "[t]he deed's second clause refer[red] to the class as [Martha's] 'children or representatives of [her] children.'" *Id.* The court found that because the deed referenced Martha's "children or representative of [her] children[,]" the class members' interests were not contingent upon their survival to the termination of the life estate. *Id.* Thus, under the Tennessee Class Gift Statute, "[t]he share of the property of a child who predecease[d] [Martha] would pass to that child's representatives."[9] *Id.*

Although our Supreme Court's *Rutherford County* opinion reversed this Court regarding the status of the class members' interests as vested or contingent, finding that the testator intended the broad language of "children or representatives of children" to define the class, rather than the narrow legal definition of "heirs of the body," the language utilized in this Court's opinion regarding the term "heirs of the body" is, nonetheless, instructive. In determining whether the life tenant's daughter-in-law was included within the class, we discussed the term "heirs of the body" as follows:

> Absent language to the contrary, "heirs of the body" means lineal descendants. *Fehringer v. Fehringer*, 222 Tenn. 585, 590 429 S.W.2d 258, 260 (1969). . . .
>
> It is settled law in Tennessee that in its primary sense, a remainder to the "heirs of his [life tenant's] body" is a remainder to the life tenant's *lineal descendants*. *Campbell v. Lewisburg & N.R. Co.*, 160 Tenn. 477, 26 S.W.2d 141 (1930). . . .
>
> . . . .
>
> The term "heirs of the body" also connotes a gift to a multigenerational class of lineal descendants. [(citing Restatement (Second) of the Law of Property (Donative Transfers) § 25.9).] Absent language or circumstances indicating a contrary intent, it is presumed the donor adopted these meanings.
>
> Absent circumstances requiring a different interpretation, "heirs of the body" includes generations after children as well as children. *Campbell*, 160 Tenn. at 477, 26 S.W.2d at 141. . . .

*Rutherford County*, 2002 WL 312506, at *4, 9. We further explained that

---

[9] Our Supreme Court, nonetheless, found that Martha's daughter-in-law had no interest in the property because she was neither a child of the life tenant, nor a representative of a child of the life tenant. *Id.* at 598.

> "When a limitation is in favor of the 'heirs of the body' of a designated person . . . then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are the lineal descendants of the designated ancestor who under the applicable local law would succeed to the property if such ancestor died owning the property and intestate at the time when the group is to be ascertained. . . ."

*Id.* at *4 (quoting *Fehringer*, 222 Tenn. at 591, 439 S.W.2d at 260). Thus, "bodily heirs" must be not only lineal descendants, "but also must be the intestate heirs of the person." *Id.* at *10.

In a footnote to the *Rutherford County* opinion, we stated that the testator's granddaughter–the daughter of the testator's deceased son–was "a member of the grantee class of heirs of [the life tenant's] body[,]" and that if "she survive[d the life tenant, she would] take a portion of the remainder under the terms of the grant itself." *Id.* at *25 n.35. Similarly, we find in the instant case, that if T.W. was Nellie's issue, and Iris is T.W.'s issue, then Iris is a "bodily heir" of the life tenant, and therefore, she is entitled to take directly under the Will.

As we stated above, to be a "bodily heir" of a life tenant, one must be both a "lineal descendant" and an intestate "heir." Black's Law Dictionary defines a "lineal descendant" as "[a] blood relative in the direct line of descent[, including] children, grandchildren, and great-grandchildren[.]" **Black's Law Dictionary** (8th ed. 2004). It is clear that biological grandchildren are lineal descendants of their grandparents. *See Campbell v. Lewisburg & N.R. Co.*, 26 S.W.2d 141, 144 (Tenn. 1930) ("Heirs of the body include grandchildren as well as children–lineal descendants.") (citing *Ward v. Saunders*, 35 Tenn. (3 Sneed) 387 (Tenn. 1855)). Thus, if Iris is Nellie's biological grandchild, then she is also her lineal descendant.

"The legal meaning of the word 'heirs' is the class of persons upon whom descent is cast by the statute of descent and distribution." *Id.* at *10 (quoting *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983)). Because a will must be "interpreted in the light of the law in existence at the time of the death of the testator[,]" ***Third Nat'l Bank in Nashville v. Stevens***, 755 S.W.2d 459, 462-63 (Tenn. Ct. App. 1988) (citing Tenn. Code. Ann. § 32-3-101; *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761 (1963)), we look to the 1934 statute concerning descent and distribution, which provided that

> The land of an intestate owner shall be inherited in the following manner by his lineal descendants, collateral kindred, or ascendants:
>
> . . .
>
> (a) By descendants.– By all the sons and daughters of the deceased, to be divided amongst them equally. And if any child of said intestate shall have died in his lifetime, his lineal descendants shall represent their parent, and be entitled to the same portion of the estate of the deceased as their parent would have been entitled

to if living.

If Iris is in fact T.W.'s issue, as she alleges, had Nellie died intestate, Iris would have been entitled to an intestate share of Nellie's share by representation. "The term 'by representation' refers to the principle by which the issue of a deceased person take or inherit the share of an estate which their immediate ancestor would have taken or inherited if living." ***Doramus v. Rogers Group, Inc.***, No. M2008-00918-COA-R3-CV, 2001 WL 196974, at *4 (Tenn. Ct. App. Feb. 28, 2001) *app. denied* (Sept. 10, 2001) (citing *Barnes v. Redmond*, 19 Cates 45, 127 Tenn. 45, 152 S.W. 1035, 1036 (1913); Black's Law Dictionary 1301 (6th ed. 1990)). Accordingly, if T.W. was Nellie's issue, and Iris is T.W.'s issue, then Iris is Nellie's intestate "heir."

If Iris is both Nellie's "heir" and her "lineal descendant," she is also her "bodily heir." Because Iris is potentially a member of the class of Nellie's "bodily heirs" to whom Testator's land was devised at Nellie's death, the trial court erred in granting summary judgment to defendants.

## V.  CONCLUSION

For the aforementioned reasons, we reverse the chancery court's grant of summary judgment to defendants, and we remand to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, Faye Bowling Devore, Tannis Ann Bowling Pleasant, Allan Bruce Bowling, and Helen Mabel McKnight, for which execution may issue if necessary.

_____ALAN E. HIGHERS, P.J., W.S.